IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

RONDA LEE ABBOTT,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　　No. 20-cv-1214-TMP
　　　　　　　　　　　　　　　　)
KILOLO KIJAKAZI,　　　　　　　)
ACTING COMMISSIONER OF SOCIAL　)
SECURITY,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　Defendant.　　　　　　　)

_____

### ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION
_____

On September 24, 2020, Ronda Lee Abbott filed a Complaint seeking judicial review of a social security decision.[1] (ECF No. 1.) Abbott seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") determining that she did not qualify for widow's insurance benefits and supplemental security income ("SSI"). For the following reasons, the decision of the Commissioner is REVERSED and REMANDED.

### I.  FINDINGS OF FACT

On July 14, 2017, Abbott protectively filed a Title II application for disabled widow's benefits. (R. at 10.) Abbott also

_____

[1]After the parties consented to the jurisdiction of a United States Magistrate Judge on April 16, 2021, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R.

filed a Title XVI application for supplemental security income on December 26, 2017. (R. at 10.) The applications, which alleged an onset date of December 1, 2015, were denied initially and on reconsideration. (R. at 10.) Abbott then requested a hearing, which was held before an Administrative Law Judge ("ALJ") on November 19, 2019. (R. at 10.)

After considering the record and the testimony given at the hearing, the ALJ used the five-step analysis to conclude that Abbott was not disabled under sections 202(e), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. at 18.) At the first step, the ALJ found that Abbott had not "engaged in substantial gainful activity since December 1, 2015, the alleged onset date." (R. at 13.) At the second step, the ALJ concluded that Abbott has the following medically determinable impairments: "hypertension, hypothyroidism, diabetes with neuropathy, obesity, and depression." (R. at 13.) The ALJ concluded that Abbott "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments." (R. at 13.) Because the ALJ found that

Civ. P. 73. (ECF No. 16.)

Abbott did not suffer from a severe impairment, the ALJ found that Abbott was not disabled and stopped the analysis at step two. (R. at 17.)

In reaching the finding that Abbott does not have a severe impairment, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (R. at 13.) When reviewing Abbott's symptoms, the ALJ followed a two-step process. First, the ALJ determined "whether there is an underlying medically determinable physical or mental impairment(s)." (R. at 13.) Second, once an impairment was established, the ALJ evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work related activities." (R. at 14.) The ALJ summarized Abbott's claims as follows:

> The claimant alleged in her application for benefits that she was disabled due to diabetes, hypertension, hypothyroidism, and mental health issues. She testified that she continues to experience dizzy spells and can "black out" at times. She experiences swelling in the legs and feet that preclude her from any prolonged standing or walking. She experiences shortness of breath but cannot seek consistent medical treatment due to a lack of insurance coverage. Previous medical evaluations have attributed her symptoms to high blood pressure and thyroid issues. The claimant testified that she experiences mental health issues due to increased stress from her physical medical problems. She was offered mental health counseling but alleged that she had no way

-3-

to get there. She receives medication from the local
health department but testified that she receives little
benefit from these medications. The claimant stated that
her sister lives with her and helps her with daily
activities. In an agency questionnaire, the claimant
alleged that she does not like being around others and
could not stand or walk for prolonged periods due to pain
and swelling. She indicated that she could perform self-
care activities, prepare simple meals, carry out
household chores, shop in stores, and manage her
finances. The claimant reported that her daily activities
included watching television and sewing. She alleged that
she did not interact socially with anyone and did not go
anywhere. The claimant stated she could follow a recipe
when cooking or baking. She got along well with authority
figures and could adapt to changes in routine but did not
handle stress well.

(R. at 14.) The ALJ stated that these allegations "are inconsistent

with the record in its entirety." (R. at 14.)

The ALJ stated Abbott's allegations are inconsistent with the

objective medical evidence. The ALJ first considered the treatment

records from Gibson County Health Department in May 2017. The ALJ

wrote:

The claimant presented for treatment of an acute, short-
lived sinus infection and feeling tired. The claimant's
height was 60 inches and her weight was 194 pounds with a
body mass index (BMI) of 37.9. Her blood pressure was
149/86. A history of hypertension, diabetes,
hypothyroidism, and knee pain was noted. Physical
examination was essentially normal. The record showed
that exam findings in May 2017 indicated that the
claimant experienced a burning sensation in her bilateral
feet and toes. Physical examination did show some
decreased sensation in the bilateral great toes but was
otherwise normal and there was no indication of any gait
disturbance. She was subsequently diagnosed with
peripheral neuropathy.

-4-

(R. at 14.)

Next, the ALJ considered the records from Dyersburg Methodist Hospital in January 2018: "Claimant presented with allegations of leg pain. However, there were no allegations of tenderness, rash, tingling, or weakness. Physical examination was normal except for mottling blotches on both lower extremities. There was normal sensation, strength, and movement throughout." (R. at 14.)

The ALJ also considered the records from Jackson Madison County General Hospital in January 2018: "Claimant continued to allege bilateral leg pain. Physical examination showed that the claimant's blood pressure was 189/88. The musculoskeletal portion of the exam was normal except for some bilateral lower extremity tenderness with coolness to the touch. Doppler studies of the lower extremities revealed no abnormalities." (R. at 15.)

Next, the ALJ considered the health department records from March 2018, which "showed that claimant continued to allege problems with her thyroid and blood sugar. Blood testing revealed elevated thyroid stimulating hormones. The claimants A1C was 5.6, which was considered at the extremely high end of normal." (R. at 15.)

Next, the ALJ considered the reports of Donita Keown, M.D., a consultative physician who examined claimant on request of the

Social Security Administration:

> The claimant continued to allege problems related to
> diabetes and neuropathy. However, Dr. Keown noted that
> the claimant was using medication and her blood sugar
> levels were moderately well controlled. There were no
> allegations related to renal function or vision declines.
> Physical examination showed that lung fields were clear.
> There were Heberden's nodules on the distal
> interphalangeal joints with a full range of motion in the
> MCPs, proximal, and distal joints. There was a full range
> of motion at the wrist joints, elbows, shoulders, hips,
> knees, and ankles. Varicosities were noted over the right
> lateral calf. There was some mildly decreased range of
> motion in the cervical and thoracolumbar spine. The
> claimant's gait and station were normal and there were no
> neurologic defects. Dr. Keown diagnosed the claimant with
> diabetes, mild diabetic peripheral neuropathy,
> hypertension, hypothyroidism, and obesity. . . . Dr.
> Keown opined that the claimant could sit for 6-8 hours
> during an 8-hour day, stand and/or walk for 4-6 hours
> during an 8-hour day, and lift and/or carry 20-25 pounds
> occasionally and 10-12 points on a more frequent basis.

(R. at 15.) Regarding Abbott's obesity diagnosis, the ALJ stated,

"[i]n accordance with SSR 19-2p, I find obesity to be non-severe as

it causes no more than a mild limitation of function." (R. at 15.)

Dr. Keown evaluated Abbott again on November 14, 2018. The ALJ

noted that there were "little, if any changes in exam findings."

(R. at 15.) The ALJ stated, "claimant continued to have no

neurologic defects with only some mildly decreased range of motion

in the spine. Dr. Keown noted that the claimant's diabetes and

hypertension were poorly controlled. Her opinions as to the

claimant's physical abilities was unchanged." (R. at 15.) In regard

to Dr. Keown's findings the ALJ wrote:

> I find that Dr. Keown's opinions are consistent with a
> reduced range of light work. However, I note that her
> findings showed no neurologic defects and only reduced
> range of motion in the spine and joints. The claimant's
> gait was normal but waddling in November 2018, which
> would be consistent with the claimant's weight, but would
> not cause more than a mild limitation of function.
> Indeed, Dr. Keown's findings showed no more than mild
> issues caused by her impairments. Therefore, while I
> agree with her objective findings, I find her opinion to
> be unpersuasive.

(R. at 15.)

Next, the ALJ reviewed health department records from 2019,

which showed "continued allegations of lower extremity problems.

The claimant continued to have moderately controlled blood pressure

with readings in April 2019 of 148/89 and 113/58 in March 2019 when

she was more complaint with her medications. Physical exam findings

during 2019 remained consistent with little, if any abnormal

findings." (R. at 15.) After considering the evidence of record,

the ALJ stated:

> I find that the claimant's medically determinable
> impairments could reasonably be expected to produce the
> alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting
> effects of these symptoms are not entirely consistent . .
> . Indeed, the claimant is able to perform self-care
> activities, shop in stores, prepare meals, carry out
> household chores, and manage her finances. Her blood
> pressure and glucose levels were at least moderately well
> controlled when compliant with medication. Physical exam
> findings have been consistently normal with no problems
> found in her gait, station, muscle strength, or

sensation, despite a diagnosis of peripheral neuropathy. The claimant's A1C levels did not rise above the normal range throughout the record. The claimant alleged a lack of insurance prevented her from seeking medical treatment but health department records showed a consistent use of services with medication refills. The claimant alleged knee pain and she was treated for a baker's cyst that resolved. Again, there were no findings of an antalgic gait or the need for an assistive device. Exam findings showed consistently normal psychiatric function. She received Prozac from the health department and was offered counseling but alleged being unable to find transportation for this counseling. However, she was able to find transportation for regular visits to the health department. Therefore, based on the longitudinal review of the record, I find that, whether considered singly or in combination, the claimant's medically determinable impairments cause no more than a mild limitation of function and are non-severe.

(R. at 16.)

The ALJ found the State agency's consulting physicians and psychological examiners opinions to be "only minimally persuasive." The ALJ wrote:

"[T]he state agency's consulting physicians and licensed psychological examiners evaluated the claimant's record and opined that her impairments were non-severe. However, State agency evaluations found that peripheral neuropathy and anxiety were severe impairments but the anxiety cause[d] no more than mild limitations. Physically, they opined that the claimant could perform light work with occasional postural movements. I agree with the State agency determinations that the claimant's impairments were non-severe and caused no more than a mild limitation of function. As stated above, the medical record supports this finding with consistently normal physical examinations and psychiatric findings. I do not agree with the State agency that her physical impairments would limit her to a reduced range of light work as the record supports finding them non-severe. Therefore, I find the

-8-

state agency's opinions to be only minimally persuasive.

(R at 16.) Next the ALJ considered Abbott's medically determinable mental impairment. (R. at 16.) She considered the four broad functional areas, set out in the disability regulations for evaluating mental disorders. (R. at 16.); 20 C.F.R. Part 404, Subpart P, Appendix 1. On the first functional area, the ALJ wrote:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant shops for groceries and other personal goods, indicating abilities to plan for such purchases, make and remember a shopping list, determine an appropriate shopping location, and understand financial transactions, among others. The claimant prepares meals, does laundry, and other household chores, demonstrating significant abilities in understanding the need for such activities, remembering the appropriate steps for completion of these tasks, and applying this information to successfully complete the intended tasks. These factors tend to demonstrate an ability to understand, remember, or apply information independently, appropriately, and on a sustained basis.

(R. at 16-17.) On the second functional area, the ALJ wrote:

> The next functional area is interacting with others. In this area the claimant has mild limitation. The claimant reports being able to shop independently, which involves interacting with cashiers and tolerating the presence of other shoppers.

(R. at 17.) On the third functional area, the ALJ wrote:

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant is able to shop for groceries and other items, which show the ability to persist with a task despite distractions. The claimant has sufficient concentration to watch television and movies. She is able

-9-

> to maintain concentration and focus with which to sew on
> a regular basis. Persistence is also seen in the
> claimant's ability to complete various household chores.

(R. at 17.) On the fourth functional area, the ALJ wrote:

> The fourth functional area is adapting or managing
> oneself. In this area, the claimant has mild limitation.
> The claimant reports taking her mediations as prescribed,
> shopping, and managing her finances. These activities all
> demonstrate and ability to self-manage.

(R. at 17.) Ultimately, the ALJ found that "[b]ecause the
claimant's medically determinable mental impairment causes no more
than 'mild' limitation in any of the functional areas and the
evidence does not otherwise indicate that there is more than a
minimal limitation in the claimant's ability to do basic work
activities, it is non-severe." (R. at 17.) Accordingly, the ALJ
found that Abbott had not been disabled, under sections 202(e),
223(d), or 1614(a)(3)(A) of the Act, from December 1, 2015 through
the date of the ALJ's decision. (R. at 17.)

On December 24, 2019, the ALJ issued a decision detailing the
findings summarized above. (R. at 10-17.) On August 21, 2020, the
Appeals Council denied Abbott's request for review. (R. at 1-3.)
Abbott now seeks judicial review of the ALJ's decision, which
stands as the final decision of the Commissioner under § 1631(c)(3)
of the Act. Abbott argues that the ALJ's step-two finding that
Abbott's impairments did not cause limitations in her ability to

work is contrary to law and not supported by substantial evidence. (ECF No. 17-1 at 1.)

## II.   CONCLUSIONS OF LAW

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

-11-

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant can do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment

-13-

compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past

-14-

relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

## C.  **Whether Substantial Evidence Supported the ALJ's Step Two Finding**

On appeal, Abbott asserts the ALJ erred in determining she does not suffer from a "severe" impairment at step two and in failing to proceed to the next steps of the sequential evaluation process. (ECF No. 17-1 at 4.) The ALJ found that "the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities. Thus, the claimant does not have a severe impairment or combination or impairments." (R at 17.)

"The regulations define a 'severe' impairment as 'any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities.'" <u>Griffeth v. Comm'r of Soc. Sec.</u>, 217 F. App'x 425, 428 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1520(c)). The

regulations, 20 C.F.R. §§ 404.1521 and 416.991, define a non-severe

impairment as:

> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
>> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>>
>> (2) Capacities for seeing, hearing, and speaking;
>>
>> (3) Understanding, carrying out, and remembering simple instructions;
>>
>> (4) Use of judgment;
>>
>> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>>
>> (6) Dealing with changes in a routine work setting.

"At step two 'significant' is liberally construed in favor of

the claimant." Id. The Sixth Circuit has "construed the step two

severity regulation as a 'de minimis hurdle' in the disability

determination process." Id. (quoting Higgs v. Bowen, 880 F.2d 860,

862 (6th Cir. 1988)); see also Sullivan v. Comm'r of Soc. Sec., No.

18-5523, 2018 WL 8344632, at *3 (6th Cir. Dec. 17, 2018). The Sixth

Circuit has stated that:

-16-

> The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." <u>Farris v. Sec'y of HHS</u>, 773 F.2d 85, 89 (6th Cir. 1985).

<u>Griffeth</u>, 217 F. App'x at 428. "[I]f an impairment has 'more than a minimal effect' on the claimant's ability to do basic work activities, the ALJ is required to treat it as 'severe.'" <u>Doerr v. Astrue</u>, No. 2:07-cv-275, 2009 WL 200989, at *10 (E.D. Tenn. Jan. 27, 2009)(quoting SSR 96-3p (July 2, 1996)). Social Security Ruling 96-3p states, in pertinent part, that "an impairment(s) is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." 1996 WL 374181 at * 1 (July 2, 1996); <u>see also</u> <u>Sullivan</u>, 2018 WL 8344632, at *3.

Thus, "[t]o establish a 'severe' impairment at step two of the sequential evaluation process, [a] plaintiff must make only a '*de minimis*' showing," namely, a claimant "need only show that an impairment would have more than a minimal effect on her ability to do basic work activities." <u>Elliott v. Astrue</u>, 507 F. Supp. 2d 1188,

1193 (D. Kan. 2007). However, to establish a "severe" impairment, a plaintiff "must show more than the mere presence of a condition or ailment." Id. (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

Abbott asserts that given the de minimis hurdle of the step two severity regulation under Sixth Circuit case law, the ALJ erred in finding that she did not suffer from a "severe" impairment and in failing to proceed to the next steps of the sequential evaluation process. (ECF No. 17-1 at 4.) The Commissioner asserts that the ALJ properly evaluated the evidence at step two. (ECF No. 20 at 2.)

Both Dr. Keown and the State Agency's consulting physicians stated that Abbott's physical impairments would limit her to a reduced range of light work. (R. at 15-16.) When evaluating Dr. Keown's opinion that Abbott could only perform light work, the ALJ wrote, "Dr. Keown's findings showed no more than mild issues caused by [Abbott's] impairments. Therefore, while I agree with her objective findings, I find her opinion to be unpersuasive." (R. at 15.) Regarding the State Agency evaluation, the ALJ wrote, "I do not agree with the state agency that her physical impairments would limit her to a reduced range of light work as the record supports finding them non-severe. Therefore, I find the State agency's opinions to be only minimally persuasive." (R. at 16.) In short,

-18-

the ALJ gave little weight to the opinion of every state medical expert in this case.

The ALJ cited to Abbott's ability "to perform self-care activities, shop in stores, prepare meals, carry out household chores, and manage her finances" as evidence that her impairments are not severe. However, at no point did Abbott state that she is able to perform any activity that would rise above the level of light work. Additionally, the ALJ failed to include the fact in her analysis that "[Abbott's] sister lives with her and helps her with daily activities." (R. at 14.) The ALJ also noted that Abbott's blood pressure and glucose levels were "at least moderately well controlled when compliant with medication," her physical exam findings were "consistently normal," and her A1C values "did not rise above the normal range throughout the record." (R. at 16.) However, Dr. Keown observed in her November 2018 examination that "claimant's diabetes and hypertension were poorly controlled" and Abbott had "mildly decreased range of motion in the spine." (R. at 16.) Health department records showed Abbott's A1C was 5.6, which was considered at the "extremely high end of normal." (R. at 15.) Although the ALJ is not bound by the opinions of state medical experts, the record in this case does not support the ALJ giving little weight to these consistent medical opinions.

The Sixth Circuit has stated that "[t]he purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'" <u>Farris</u>, 773 F.2d at 89. This is not such a claim. The undersigned concludes that the ALJ's finding that Abbott did not suffer from a "severe" impairment at step two of the sequential evaluation process is not supported by substantial evidence. Therefore, the undersigned concludes this matter should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative consideration, namely, completion of the next steps of the sequential evaluation process.

### III.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 15, 2021
Date

-20-